**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2336-14T2

MSB MOVING & STORAGE,
JEFF BREWER and ROBIN
CITTONE,

     Plaintiffs-Respondents/
     Cross-Appellants,

v.

FIVE STAR INSTALLATION,
PATRIOT SHIPPING CORP.,
BRIAN MULLIGAN, DAN NITTI
and JOE CASERTA,

     Defendants-Appellants/[1]
     Cross-Respondents.

_____

     Submitted September 27, 2016 — Decided June 6, 2017

     Before Judges Reisner and Sumners.

     On appeal from Superior Court of New Jersey,
     Law Division, Middlesex County, Docket No.
     L-5145-12.

     The Beekman Law Firm, attorneys for appellant/
     cross-respondent (Christopher Beekman, on the
     brief).

---

[1] According to the record, MSB Moving & Storage is an L.L.C. and
Five Star Installation is incorporated, but neither was pled as
such nor was the caption corrected.

Fusco & Macaluso, L.L.C., attorneys for respondent/cross-appellant (Alfred V. Gellene, on the brief).

PER CURIAM

Defendants Five Star Installation and Patriot Shipping Corp. (collectively "Five Star"),[2] and, its principals Brian Mulligan, Daniel Nitti, and Joseph Caserta appeal from a December 5, 2014 amended order of final judgment awarding plaintiff MSB Moving & Storage (MSB) and its chief executive officer, Jeffery Brewer, $56,706 in damages after a bench trial. Plaintiff cross-appeals. For the following reasons, we affirm except as to the amount of $7,977.20, which the parties agree should be subtracted from the judgment. We remand for the limited purpose of entering an amended judgment reflecting that reduction.

I.

MSB, managed by Brewer, provides moving and storage services for commercial and non-commercial clients.[3] Similarly, Five Star is in the business of providing moving, warehousing, storage,

_____

[2] The trial court found that Five Star Installation and Patriot Shipping Corp. are a single business entity because the companies are closely related, shared warehouses, and comingled operations.

[3] Plaintiff Robin Cittone is married to Brewer and is the legal owner of MSB, but did not participate in its operation. From the record it appears that she is not on the final judgment awarding damages as opposed to Brewer, who was specifically awarded damages for health insurance that are not the subject of appeal.

relocation, and installation services primarily for commercial clients. Sometime in 2009, MSB and Five Star began a business relationship in which MSB provided moving services (labor and equipment) for Five Star's clients. Under their arrangement, the clients would pay Five Star, who would then make weekly payments to MSB for the services it billed Five Star. Approximately a year later, Five Star fell behind in making its payments to MSB due to a downturn in business, and an extended payment schedule that Five Star allowed its clients to make, which resulted in Caserta promising to make partial payments to MSB. Although Five Star's indebtedness to MSB grew, MSB continued to accept work from Five Star.

Eventually in 2012, MSB sued Five Star alleging breach of contract and claiming $250,017 in damages. Following a bench trial on August 18 and 19, 2014, the parties submitted written summations disputing the amount owed, in which Five Star requested to offset potential damages. On October 8, an order for judgment and a written decision was issued awarding MSB $47,178 plus costs. On October 16, after considering MSB's letter noting mathematical errors in the initial order, the court issued an amended order for judgement awarding MSB $60,706 plus costs. Five Star subsequently filed a timely Rule 4:49-2 motion for reconsideration, and after argument, the court entered an order on December 5, reducing MSB's

judgment to $56,706 plus costs. A written decision was issued on December 8, setting forth the court's reasons for the amended judgment.

The ensuing appeal involves the following three trial issues.

Factored Outstanding Invoices

MSB contended that it became financially strained due to Five Star's payment delays, and as a result MSB sold $119,747 of its outstanding invoices to a commercial factor, Quantam Corporate Funding Ltd. In return, MSB was paid $96,770, or approximately seventy-five to eighty-five percent of the factored Five Star invoices. MSB's Brewer testified that Five Star cooperated with the factoring transaction by confirming to Quantam that the invoices were legitimate, and promised to pay MSB the invoices' balance of $22,977.29 that Quantam did not pay. Testimony by Five Star's principals was inconsistent as Mulligan and Nitti stated no such promise was made, however, Caserta acknowledged "it was possible that such promise had been made[.]"

The trial court determined that Brewer's testimony was more credible. It found that the commercial factor was obtained with "full knowledge and consent" of Five Star and, as a result, the court awarded MSB $22,975 for the invoices' balance that was not paid through the factor. In doing so, the court rejected Five Star's argument that the Statute of Frauds, N.J.S.A. 25:1-15,

required a written guaranty to pay the non-factored deficit because "the promise to pay the factoring expense was made after [Five Star's] obligation to MSB already existed."

In its motion for reconsideration, Five Star sought to remove a debtor identified as "New York," from the factor invoices because Five Star claimed it had no involvement with the debtor. The court denied the motion, determining the request was untimely because Five Star failed to object to this invoice during the trial or in its post-trial submission.

Mount Sinai Project

For this 2012 project, MSB's accepted bid to Danker, Sellew & Douglas (DS&D) was submitted on Five Star's documents because MSB needed to use Five Star's facilities and labor. Five Star sought a $24,000 credit as a set-off because it claimed that MSB was paid for work Five Star had done on the project. Jason Schatz, an employee of DS&D, testified that Five Star and MSB were both contracted to complete the job, but at some point DS&D stopped making payments to MSB and, instead made payments to Five Star. MSB, however, claimed that it was solely awarded the contract.

In its October 8 written decision, the court found the parties' respective testimony concerning compensation arrangements were full of inconsistencies, and thereby denied Five Star's setoff request because it was not supported by documentary evidence. The

court stated that the "[c]redit [m]emo [number] 1981 shows the work done by [Five Star], although nothing shows any agreement between the parties imposing responsibility for this work on MSB." Further, the court found that Schatz's testimony was not credible because he testified verbatim from notes he prepared while in the courtroom.

In its reconsideration motion, Five Star contended that invoice numbers 1946 for $9530 and 3064 for $24,130 should be set-off against the judgment award because it was not involved in the project and was not responsible for MSB's compensation. Five Star's office manager, Jessica Perez, who handles billing records, testified that she believed that MSB was billing Five Star and DS&D for the same invoices. The court disagreed. It found credible Brewer's testimony that Five Star completed work on the project even though it did not bid on the project. The court, however, denied Five Star credit for both invoices because there was no agreement establishing MSB's responsibility for payment. Moreover, the court concluded that Five Star was not entitled to a credit for invoice number 3064 because it did not seek it at trial.

After this appeal was filed, Five Star moved before the trial court to supplement the record to include new evidence of a check made payable from DS&D to MSB for $7,977.20 on invoice 1946 for

the Mt. Sinai project. On May 8, 2015, the court granted the motion. On this appeal, MSB concedes that Five Star is entitled to a $7,977.20 reduction from MSB's $56,706 judgment.

Johnson and Johnson

In 2012, Johnson and Johnson Consumer Products (J&J) accepted MSB's bid and paid MSB $154,860 to move and store its products. However, Five Star contended that it performed all the work, and designated MSB as the bidder because MSB was on J&J's "preferred vendor" list. Although Brewer conceded that MSB did not perform any work on the job, he testified that MSB kept $20,000 from the J&J payment because Five Star owed MSB money. The trial court credited Brewer's testimony about that debt.

In its October 8 decision, the court found that after deducting payments and credits to Five Star in the amount of $76,950, Five Star owed a balance of $77,910 to MSB for the project. In response to Five Star's reconsideration motion, the court amended the order of judgment on December 5, to reduce MSB's award by $4000 due to a miscalculation of a credit to Five Star.

## II.

Before us, Five Star contends that the trial court's calculations regarding the Mt. Sinai Project are inconsistent with its findings of fact because it is illogical to award MSB damages for the project, despite the trial court's finding that defendants

7

were not parties to the project. Five Star also argues that invoice number 1946 was incorrectly added to the plaintiff's award because the invoice was issued to a different party.

With respect to the J&J project, Five Star argues that the trial court's findings of fact reflect a miscalculation, because the $20,000 MSB retained should have been deducted from the final judgment awarded to MSB. Five Star argues the court awarded MSB $20,000 twice, because Brewer retained $20,000 but the trial court also allegedly deducted $20,000 from Five Star's set off amount.

On its challenge to the factoring issue, Five Star contends it is not obligated to pay the factor pursuant to N.J.S.A. 25:1-15, because a personal guarantee to answer for the debt of another needs to be in a signed writing in order to be enforceable. Finally, it argues that the trial court erred in denying its motion to amend the judgment because Five Star allegedly never acknowledged the debt from a "New York" invoice for $11,285 and the burden of proof rests with the plaintiff.

On cross appeal, MSB contends that the trial court erred in disallowing seventy-five percent of its invoices to Five Star for lacking back up. It argues that no evidence was ever submitted by Five Star as to the inaccuracy of the invoices, and that the trial court allowed other invoices without backup, thus it should logically allow the other invoices without backup.

Our standard of review of the trial court's determinations following a non-jury trial is a limited one. Petrozzi v. City of Ocean City, 433 N.J. Super. 290, 316 (App. Div. 2013), certif. denied, 217 N.J. 623 (2014). Accordingly, an appellate court must "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 483-84 (1974)). Reviewing courts "should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms, supra, 65 N.J. at 484). Review on appeal "does not consist of weighing evidence anew and making independent factual findings; rather, our function is to determine whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999) (citing State v. Johnson, 42 N.J. 146, 161 (1964)).

We, however, owe no deference to the "trial court's interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of

Manalapan, 140 N.J. 366, 378 (1995) (citations omitted). We review such decisions de novo. 30 River Court E. Urban Renewal Co. v. Capograsso, 383 N.J. Super. 470, 476 (App. Div. 2006) (citing Rova Farms, supra, 65 N.J. at 483-84; Manalapan Realty, supra, 140 N.J. at 378).

A plaintiff has the burden of proving his or her damages. Caldwell v. Haynes, 136 N.J. 422, 436 (1994). In doing so, "[i]t is well-settled that the 'law abhors damages based on mere speculation.'" Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118, 128 (App. Div. 2002) (quoting Caldwell, supra, 136 N.J. at 422), certif. denied, 176 N.J. 279 (2003). Nevertheless, the absence of evidence as to one measure of damages should not preclude an award based on an alternative and reliable measure of damages. Cf. St. Louis, LLC v. Final Touch Glass & Mirror, Inc., 386 N.J. Super. 177, 188 (App. Div. 2006) (considering alternative forms of calculating damages in construction cases). "Proof of damages need not be done with exactitude . . . . It is . . . sufficient that the plaintiff prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate." Lane v. Oil Delivery, 216 N.J. Super. 413, 420 (App. Div. 1987); see also Totaro, Duffy, Cannova and Co., L.L.C. v. Lane, Middleton & Co., L.L.C., 191 N.J. 1, 14 (2007). In fact,

10

"courts will fashion a remedy even though the proof on damages is inexact." Kozlowski v. Kozlowski, 80 N.J. 378, 388 (1979) (citations omitted).

As for a trial court's denial of a motion for reconsideration, we have determined that

> [r]econsideration itself is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice[.] It is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion, but should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (citation omitted).]

Therefore, we will not disturb a judge's denial of a motion for reconsideration absent an abuse of discretion. See id. at 289.

Applying these standards, with the exception of MSB's concession that the judgment should be reduced by $7,977.20 to reflect payment it received for invoice 1946 on the Mt. Sinai project, we affirm substantially for the reasons the trial court expressed in its written decisions. We defer to the court's factual determinations, regarding the claims and credits sought by both parties, which are supported in the record thorough

11

testimony as well as the presentation and absence of credible documentary evidence.

We also decline to disturb the court's determination that Five Star's promise to pay MSB's invoices, which were not fully covered by the factor, did not need to be in writing pursuant to N.J.S.A. 25:1-15. The statute does not apply when the promisor's primary object is to serve the promisor's own interest or purpose. Walder, Sondak, Berkeley & Brogan v. Lipari, 300 N.J. Super. 67, 76 (App. Div.) (citing Schoor Assoc. v. Holmdel Heights Constr. Co., 68 N.J. 95, 102 (1975)), certif. denied, 151 N.J. 77 (1997). Here, Five Star's promise was to protect its own underlying obligation to MSB.

As noted, damages need not be exact. Lane, supra, 216 N.J. Super. at 420. Thus, we conclude that the trial court's final amended order judgement was a fair and reasonable calculation of damages given the parties' practice of doing business in which it was not clear who was providing the services to the customer.

Affirmed in part, modified in part, and remanded to reduce the final judgment by the amount of $7,977.20.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2336-14T2